UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80970-CIV-MARRA

CHE NASH,

Plaintiff,

vs.

PALM BEACH COUNTY SCHOOL DISTRICT
and PETER LICATA, in his individual capacity,

Defendants.

_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' The School Board of Palm Beach

County, Florida and Peter Licata's Motion for Summary Judgment (DE 51 and 53).  The motion

is fully briefed and ripe for review.  The Court has carefully considered the motion and is

otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to

interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving

party, for the purpose of this motion, are as follows:

Plaintiff, a male individual who is multiracial – African and Caucasian descent – was

employed by Defendant School Board as a teacher (Second Am. Compl. ¶ 7.)  On or about July

or August of 2003, Plaintiff was hired by Defendant Peter Licata to teach sixth grade science at

Boca Raton Middle School and received a satisfactory evaluation signed by Defendant Licata.

(Second Am. Compl. ¶ 8; Affidavit of Plaintiff ¶ ¶ 3-4, DE 55.)   In May 2004, Plaintiff was

"excessed" from his position at the school. (Second Am. Compl. ¶ 9.)   Plaintiff states that

Defendant Licata told him that enrollment had declined, thus mandating Plaintiff being excessed. (Affidavit of Plaintiff ¶ 6.)  The term "excessed" refers to the Unit Adjustment Transfer ("UAT") process whereby due to shifts in student population, a school loses a teaching unit and the affected teacher(s) are transferred to another school which has a shortage of teachers. (Affidavit of James Hayes, Jr. ¶ 4, Def. Ex. 4, DE 53-4.)  A "nonrenewed" or "nonreappointed" teacher is denied a contract for the upcoming year, and is effectively terminated from employment although the teacher may be able to acquire a position at another school. (Affidavit of James Hayes, Jr. ¶ 3.)  A teacher with a Professional Services Contract under Florida Statutes §1012.33 may be a UAT or an excess but may not be nonrenewed or nonreappointed. (Affidavit of James Hayes, Jr. ¶ 6.)  The UAT process is governed by the Collective Bargaining Agreement between the Palm Beach County Classroom Teachers Association and the Palm Beach County School Board ("CBA").  (Affidavit of James Hayes, Jr. ¶ 5.)

Plaintiff had a Professional Services Contract in May 2007. (Affidavit of James Hayes, Jr. ¶ 7)  As a classroom teacher, Plaintiff's employment was covered under the CBA. (Affidavit of James Hayes, Jr. ¶ 7.)   The decision as to which subject areas will have teachers subject to the UAT process is budgetary in nature, but the decision as to which teachers are involved must be based upon seniority. (Collective Bargaining Agreement IV(E)(1), Def. Ex. 4; Affidavit of James Hayes, Jr. ¶ 10.)  The UAT process does not allow for seniority to be trumped by any racial or gender qualifications. (Affidavit of James Hayes, Jr. ¶ 10.)

In May 2004, Plaintiff was hired to teach physical education and coach boys basketball at Olympic Heights Community High School ("OHCHS"). (Second Am. Compl. ¶ 14; Affidavit of Plaintiff ¶ 8.)  Defendant Licata arranged for Plaintiff to receive an interview for the position at

OHCHS. (Deposition of Plaintiff at 19, Ex. 2.)  Defendant Licata overlooked Plaintiff for two vacant sixth grade science positions and hired two new teachers, both white males. (Affidavit of Plaintiff ¶ 9.)  When Plaintiff began teaching at OHCHS, the physical education staff was comprised of three men and three women. (Affidavit of Plaintiff ¶ 10.)  On March 31, 2005, Plaintiff received a satisfactory evaluation signed by the principal and the assistant principal. (Affidavit of Plaintiff ¶ 12.)  In August 2005, Defendant Licata was assigned to OHCHS to serve as the Principal. (Second Am. Compl. ¶ 16.)  In August 2005, Defendant Licata informed Plaintiff that in order to avoid being subject to the UAT process, Plaintiff would need to coach boys track. (Second Am. Compl. ¶ 17; Affidavit of Plaintiff ¶ 14.) The physical education staff in August of 2005 had three women and 2 men. (Affidavit of Plaintiff ¶ 15.)

In August 2005, Defendant Licata enlisted Plaintiff and fellow basketball coach, Klaytus Williams, who is African-American, for a basketball league in Boynton Beach. (Second Am. Compl.¶ 18.)  This conflicted with Plaintiff's other employment.  (Affidavit of Plaintiff ¶ 16.)  In December 2005, Defendant Licata allowed an outside youth basketball league to use the gymnasium during the winter break. (Second Am. Compl.¶ 21.)  During the winter break in 2005, the basketball team practiced at 6:00 a.m.[1] (Second Am. Compl. ¶ 21.)  Plaintiff stated in his affidavit that no other team sport was forced to give up practice facilities during the season and both boys and girls basketball head coaches are African-American. (Affidavit of Plaintiff ¶ 18.)

In July 2006, Plaintiff received his Professional Educator's certification from the Florida Department of Education allowing him to teach physical education and science from 2006

---

[1]  Klaytus Williams scheduled the basketball practices. (Deposition of Plaintiff at 29.)

3

through 2011. (Second Am. Compl.¶ 22; Affidavit of Plaintiff ¶ 20.)  In August 2006, Plaintiff

was the only male physical education at OHCHS. (Second Am. Compl.¶ 24; Affidavit of Plaintiff

¶ 21.)  The other three physical education teachers were white females. (Second Am. Compl. ¶

24; Affidavit of Plaintiff ¶ 21.)  The other three physical education teachers had more years of

experience than Plaintiff. (Deposition of Plaintiff at 34.)  Plaintiff states in his affidavit that he

was "fired" from his coaching position and replaced by a white male, new to the district, despite

having a good record with no notice of problems with his performance. (Affidavit of Plaintiff ¶

22.)  Plaintiff also states that Defendant Licata assigned him two classes during the same class

period, and that female physical education teachers were not assigned multiple classes.  In

addition, Plaintiff was not given keys to the personal fitness facilities, only females were granted

access.  Furthermore, locker room supervision was divided between the female teachers, but

because Plaintiff was the only male teacher, he had the sole responsibility to monitor the male

locker room.  (Affidavit of Plaintiff ¶ 23.)  In December of 2006, Plaintiff asked for money to

purchase training equipment for the boy's basketball team, which Defendant Licata denied.

(Affidavit of Plaintiff ¶ 25.)  In March of 2007, Defendant Licata purchased $10,000.00 of

weight lifting equipment for the football program.  These football coaches are white.  The weight

room then became off limits to the basketball team.  Both head basketball coaches are African-

Americans. (Affidavit of Plaintiff ¶ 26.)

Plaintiff states that on November 2005, at a Thanksgiving luncheon hosted by the

administration, while slicing a turkey, Defendant Licata asked Plaintiff if he would like "white or

dark meat because I know you are a little of both."[2] (Affidavit of Plaintiff ¶ 17.)

In April 2007, Defendant Licata informed Plaintiff that he would be assigned to teach ninth grade science for the next school year. (Second Am. Compl. ¶ 29.)  On May 8, 2007, Defendant Licata informed Plaintiff that he would be excessed (or subject to the UAT procedures) for the next school year. (Second Am. Compl. ¶ 29.)  Defendant Licata provided Plaintiff with a UAT transfer form to sign. Plaintiff, however, refused to sign it. (Second Am. Compl.¶ 29.)  Defendant Licata completed the UAT transfer form for Plaintiff so that he would have a job at Boca Raton Middle School for the following year. (Deposition of Plaintiff at 79.) 35.)

On May 10, 2007, the students were organizing a protest for Plaintiff. (Second Am. Compl. ¶ 30.)  On May 10, 2007, Defendant Licata directed Plaintiff to stop discussing his employment issues with the students. (Deposition of Plaintiff at 53; Second Am. Compl. ¶ 30.) 39. Plaintiff bases his First Amendment claim upon his belief that he had a right to discuss his personal employment situation with the students. (Deposition of Plaintiff at 57.)

Defendant Licata told Plaintiff that he was becoming a distraction to the students on the campus. (Deposition of Plaintiff at 53.)  On May 10, 2007, after the meeting with Defendant Licata, Plaintiff left the school. (Second Am. Compl.¶ 30.)  After May 10, 2007, Plaintiff never returned to work. (Deposition of Plaintiff at 60-61.)  The last duty day for Plaintiff for the 2006-2007 school year was June 5, 2007. (Deposition of Plaintiff at 60.)  Plaintiff was absent

---

[2] In Plaintiff's deposition, he testified that he never heard Defendant Licata refer to the free and reduced lunch line as the "Caribbean Isles." (Deposition of Plaintiff at 45.) Plaintiff's affidavit makes reference to this alleged statement by Defendant Licata, but does not state whether Plaintiff actually heard Defendant Licata make this statement. (Affidavit of Plaintiff ¶ 24.)

without leave from May 10, 2007 through June 5, 2007. (Deposition of Plaintiff at 60.)
Plaintiff was assigned to teach at Boca Raton Middle School for the 2007-2008 school year.
(Deposition of Plaintiff at 61, 77-78.)  Plaintiff admits that the Defendant School Board had a
right to terminate his employment for job abandonment. (Deposition of Plaintiff at 62.)  Plaintiff
resigned before reporting to work at Boca Raton Middle School. (Deposition of Plaintiff at 77.)

Plaintiff did not want to work as a science teacher. He only wanted to teach physical
education. (Deposition of Plaintiff at 63-64.)  The harm Plaintiff would have suffered by
transferring to Boca Raton Middle School would be not "doing what [he] loved" (Deposition of
Plaintiff at 86.)  The teaching position at Boca Raton Middle School and the teaching position at
OHCHS had the same job responsibilities, the same pay, and the same duty days. (Deposition of
Plaintiff at 86.)  Plaintiff's retaliation claim is based on his belief that he was treated differently
after his mother opened a charter school in 2006 and not based on his filing a Charge of
Discrimination with the EEOC. (Deposition of Plaintiff at 87-88.)

Plaintiff's affidavit states that on May 8, 2007, Defendant Licata told Plaintiff that he
would be terminated, but no reason was given.  According to Plaintiff, school enrollment had
increased, his performance was superior, he received positive reviews and was liked by students,
teachers and administrators.  There were 27 people less senior than Plaintiff, and he was the only
male physical education teacher and the only minority in the department. (Affidavit of Plaintiff ¶
27.)  With respect to the student protest, Plaintiff states that it was organized without any
direction from him.  Defendant Licata told Plaintiff that he was becoming a "distraction on
campus" and that he "may need to finish the year at a different school site."  (Affidavit of
Plaintiff ¶ 28.)  On May 18, 2007, Plaintiff faxed the school district a copy of  his EEOC

complaint, which was filed on May 10, 2007.  On that same day, Defendant Licata gave him a lower evaluation citing concerns with record keeping and ethics.  According to Plaintiff, the observation date for this evaluation was May 7, 2007 which is Sunday, which makes this observation a "lie."[3]  Prior to 2007, Plaintiff received satisfactory evaluations. (Affidavit of Plaintiff ¶ 29.)

Defendants the School Board of Palm Beach County, Florida and Licata (collectively, "Defendants"), move for summary judgment[4] and make the following arguments.  First, they contend that Plaintiff's First Amendment claim fails because Plaintiff was not acting as a citizen speaking on a matter of public concern, but as an employee speaking about personal issues.  Second, Defendants argue that Plaintiff cannot establish a prima facie case for discrimination, hostile work environment or retaliation.  Finally, Defendants contend that there is no evidence of deliberate indifference and the defense of qualified immunity applies to Defendant Licata.

---

[3] The Court notes that May 7, 2007 was a Monday.

[4] Count one of Plaintiff's Second Amended Complaint is labeled "Violation of Constitutional Rights 42 U.S.C. Section 1983 (race discrimination and denial of equal protection under the law) (Palm Beach County School Board and Licata)."  This count states that "Plaintiff was deprived of his rights under section 1981, his free speech rights, and was denied equal protection under the law." (Second Am. Compl. ¶ 31.)  Count two is labeled "Violation of the Florida Civil Rights Act (Race Discrimination - School Board)."  Count three is labeled "Violation of the Florida Civil Rights Act (Gender Discrimination - School Board)."  Count four is labeled "Violation of 42 U.S.C. Section 1983 (Retaliation) (Palm Beach County School Board and Licata) and states that "Defendants retaliated against Plaintiff in violation of his rights under 1981 and his free speech rights." (Second Am. Compl. ¶ 42.)  Count V is labeled "Violation of the Florida Civil Rights Act (Retaliation-School Board)."

II.  Summary Judgment

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

8

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

A. First Amendment Claim

The first question that courts must consider in determining whether a public employee's speech is entitled to constitutional protection is "whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Battle v. Board of Regents for Georgia, 468 F.3d 755, 760 (11th Cir. 2006). This is a question of law. Id. Courts must consider "whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role as employee." Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).[5]

---

[5] To establish retaliation for engaging in constitutionally protected activity in violation of 42 U.S.C. § 1983, a public employee must also show that his or her interests as a citizen outweighed the interests of the State as an employer and the speech played a substantial or motivating role in the adverse employment action. Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007). Given that the Court finds Plaintiff did not speak on a matter of public concern, it is

Here, Plaintiff bases his First Amendment claim on his belief that he had a right to discuss his personal employment situation with the students. (Deposition of Plaintiff at 57.)  In fact, Plaintiff's response states that "Defendant sought to silence Plaintiff and prevent him from responding to the legitimate concerns raised by students at his school" about his "abysmal treatment" and that because these issues are not in "the best interests of the students" they are "entitled to be aired." (Response at 2.)  However, based on this foregoing precedent, the Court finds that summary judgment on Plaintiff's First Amendment claim is appropriate.  See, e.g., Battle, 468 F.3d at 761 (speech by university employee in office of financial aid to university officials about suspicions of fraud in student financial files was made pursuant to official employment responsibilities); Myles v. Richmond County Bd. of Educ., 267 Fed. Appx. 898, 900 (11th Cir. 2008) (speech was not matter of public concern when employee's speech "centered predominantly around, and were driven by, her displeasure with having been denied promotions she thought she deserved"); Collier v. Board of Tax Assessors of Augusta-Richmond County, No. CV 104-057, 2006 WL 3254494, at * 6 (S.D. Ga. Nov. 8, 2006), aff'd 244 Fed. App'x 265 (11th Cir. 2007) (granting summary judgment on First Amendment claim when the plaintiff's speech was clearly made as a disgruntled employee).[6]

---

unnecessary to address the remaining prongs of this test.

[6] Even putting aside this deficiency, Plaintiff acknowledges that he was told about the transfer on May 8, 2007 and that he discussed his "dismissal" with others on  May 10, 2007. (Affidavit of Plaintiff ¶ ¶ 27-28.)   Clearly, there can be no retaliation prior to the protected activity.  Plaintiff argues in his response memorandum other facts relating to timing, but he does not support his argument with record evidence. (Resp. at 5-6.)

### B.  Discrimination Claims

Before turning to Plaintiff's different theories of discrimination, the Court briefly notes some general propositions of law that apply to discrimination claims brought pursuant to the equal protection clause, section 1981 and section 1983 of Title 42 of the United States Code, as well as the Florida Civil Rights Act ("FCRA").  For example, section 1981 does not provide an implicit cause of action against state actors.  Instead, section 1983 is the exclusive federal remedy for violations by state actors of the rights guaranteed under section 1981.  See Butts v. County of Volusia, 222 F.3d 891, 894-95 (11th Cir. 2000).  Moreover, discrimination claims brought under the equal protection clause, section 1981 or the FCRA are subject to the same standards of proof and employ the same analytical framework. Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (discussing equal protection, section 1981 and Title VII claims); see also Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007) (Florida courts apply Title VII caselaw when they interpret the FCRA).

### 1.  Hostile Work Environment

A prima facie hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  To prove a hostile work environment claim, an employee must demonstrate that 1) he belongs to a protected group; 2)  he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee; 4) the harassment was sufficiently severe or pervasive to alter the

terms and conditions of employment and create an abusive working environment and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability. Id.; see Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999).  The Court looks at the totality of the circumstances to decide whether the harassing conduct is sufficiently severe or pervasive enough to alter the terms and conditions of employment and create an abusive working environment.  Mendoza, 195 F.3d at 1246.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court described what would not constitute harassment. "[S]imple teasing ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. at 788. (internal quotations omitted). "[S]poradic use of abusive language, gender-related jokes, and occasional teasing" are "the ordinary tribulations of the workplace," and as such, they do not amount to actionable harassment. Id. (internal quotations omitted).

Viewing the record in the light most favorable to Plaintiff, the only comment that Plaintiff could arguably contend amounted to a hostile work environment is Defendant Licata's alleged statement to Plaintiff, at a Thanksgiving luncheon, while slicing a turkey, if he would like "white or dark meat because I know you are a little of both."[7] (Affidavit of Plaintiff ¶ 17.) This

---

[7] Plaintiff's response memorandum does not identify any specific comment relating to his hostile environment claim.  There is a comment in the Second Amended Complaint regarding Defendant Licata's alleged comment referring to the free and reduced lunch lines at school as the "Caribbean lines." (Second Am. Compl. ¶ 26.)   Plaintiff testified in his deposition that he did not hear Defendant Licata make this comment.  His affidavit refers to this comment, but does not explain Plaintiff's personal knowledge.  While a court may consider racial slurs not directed at a plaintiff or made in a plaintiff's presence, a plaintiff must still provide competent evidence for the Court's consideration. Busby, 931 F.3d 764, 785 (11th Cir. 1991).  Even assuming this alleged comment was made, it, in conjunction with the "white or dark meat" comment, would not be

one comment does not rise to the level of a hostile work environment claim.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) ("it is repeated incidents of verbal harassment that continue despite the employee's objections [that] are indicative of a hostile work environment and not simply some magic number of racial or ethnic insults."); Busby v. City of Orlando, 931 F.2d 764, 785 (11th Cir. 1991) ("an employer is not charged by law with discharging all Archie Bunkers in its employ, [but only] when [the racial slurs] are so egregious, numerous, and concentrated as to add up to a campaign of harassment the employer is culpable for failing to discover what is going on and to take remedial steps."); cf. Edwards v.Wallace Comm. College, 49 F.3d 1517, 1521 (11th Cir. 1995) (racial slurs allegedly spoken by coworkers had to be so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility").

Furthermore, cases from the Eleventh Circuit demonstrate that incidents far worse than what Plaintiff claims occurred do not constitute actionable harassment.  See McCann v. Tillman, 526 F.3d 1370 (11th Cir. 2008) (affirming summary judgment on a hostile work environment claim where the African-American plaintiff was referred to by her supervisor as "girl" and where the defendant sheriff allegedly referred to a former black employee as a "nigger bitch" and declared that "he had never received the 'nigger vote' and that he didn't want it."); Barrow v. Georgia Pacific Corp., 144 Fed. App'x 54, 57 (11th Cir. 2005) (affirming grant of summary judgment when the plaintiff's supervisors told called him a "nigger," "boy" and telling him "that if he looked at 'that white girl' he would 'cut' him."); LaBeach v. Wal-Mart Stores, Inc., No. 5:07-CV-12 (HL), 2009 WL 902030, at * 4 (M.D. Ga. Mar. 27, 2009) (granting summary

---

sufficiently severe to constitute harassment.

13

judgment on racial harassment claim where supervisor, among other things, made three racist statements to the plaintiff, including telling the plaintiff to fire all black people "because they are niggers, lazy, and too stupid to do their job."); Nicholson v. City of Daphne, No. 07-0496-WS-M, 2009 WL 1789385, at * 7 (S.D. Ala. June 24, 2009) (the use of the "N" word one time is isolated and does not support a hostile environment claim).

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim because there are no material facts in the record that demonstrate severe or pervasive harassment that altered the terms and conditions of his employment, and thereby created an abusive work environment.

2. Disparate Treatment

In order to establish a prima facie case of disparate treatment under Title VII, and therefore under FCRA, the equal protection clause and section 1981, a plaintiff may establish a prima facie case of discrimination through circumstantial evidence under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973); see Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004); Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Under that framework, the plaintiff must "create an inference of discrimination through his prima facie case." Vessels v. Atlanta Independent School System, 408 F.3d 763, 767 (11th Cir. 2005). If a prima facie case has been shown, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802; Alvarez v. Royal Atlantic Developers, Inc., — F.3d —, 2010 WL 2631839, at * 7 (11th Cir. July 2, 2010)  The defendant's burden is one of production; it need not persuade the

14

court that it was actually motivated by the proffered reasons. See Chapman v. A1Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (internal citations and quotations omitted); see also Alvarez, 2010 WL 2631839, at * 7.

If the defendant satisfies the burden of production, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action. See Chapman v. A1Transport, 229 F.3d 1012, 1024 (11th Cir. 2000); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); Alvarez, 2010 WL 2631839, at * 7 ("[s]howing only that the employer's proffered reason is false does not necessarily entitle a plaintiff to get past summary judgment.")

A plaintiff establishes a prima facie case by showing that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. Burke-Fowler v. Orange County, Fla. 447 F.3d 1319, 1323 (11th Cir. 2006);  Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842-43 (11th Cir. 2000).

Defendants concede, for purposes of the motion, that Plaintiff, as an individual of mixed race, belongs to a protected class. Defendants contend, however, that Plaintiff was not subjected to an adverse employment action and there is no record evidence that Defendants treated

15

similarly situated employees outside of his protected class more favorably.  With respect to an adverse employment act, the adverse act was the decision by Defendants to "excess" Plaintiff from OHCHS at the end of the 2006-2007 school year and assign him to teach at Boca Raton Middle School for the 2007-2008 school year. (Deposition of Plaintiff at 61, 77-78.)  As previously indicated, the term "excessed" refers to the UAT process whereby due to shifts in student population, a school loses a teaching unit and the affected teacher(s) are transferred to another school which has a shortage of teachers. (Affidavit of James Hayes, Jr. ¶ 4.)  A teacher, like Plaintiff, with a Professional Services Contract, may be a UAT or an excess but may not be nonrenewed or nonreappointed. (Affidavit of James Hayes, Jr. ¶¶ 6-7.)  Therefore, the adverse act at issue is the reassignment and transfer of Plaintiff from OHCHS to Boca Raton Middle School.[8]

     An adverse employment action is defined as "[a] tangible employment action [that] constitutes significant change in employment status such as hiring, firing, failing to promote,

---

[8] Plaintiff's response memorandum states that the decision to "excess" or subject him to a "Unit Adjustment Transfer" amounts to a termination. (Response at 3.)  Plaintiff does not provide any citation to record evidence to support this contention.  Moreover, although Plaintiff's affidavit states that, on May 8, 2007,  Defendant Licata told Plaintiff he would be terminated, that statement contradicts Plaintiff's deposition testimony wherein Plaintiff admits that he had a position at Boca Raton Middle School for the 2007-2008 school year. (Deposition of Plaintiff at 77-78; Affidavit of Plaintiff ¶ 27.)  Given that this contradiction has not been explained, the Court chooses to disregard Plaintiff's affidavit on this point.  See Van T. Jenkins and Assoc. v. United States Indus., 736 F.2d 656, 657 (11th Cir. 1984)(where a party gives clear answers which negate a question of fact, that party cannot thereafter create a disputed issue with an affidavit that contradicts, without explanation, the previous clear testimony).  Finally, Plaintiff testified that, after May 10, 2007, he never returned to work and that he was absent without leave from May 10, 2007 through June 5, 2007. (Deposition of Plaintiff at 60-61.) Plaintiff also admitted that the Defendant School Board had a right to terminate his employment for job abandonment. (Deposition of Plaintiff at 62.)  Based on these admissions, Plaintiff cannot now claim wrongful termination.

reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir. 2008) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Consequently, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).  Moreover, federal courts are not designed to "second-guess the business judgment of employers" or "sit as a super-personnel department that reexamines an entity's business decisions." Id. citing Elrod v.  Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).

Both parties compare the facts of this case to the case of Polite v. Dougherty County School System, 314 Fed. App'x 180 (11th Cir. 2008).  In that case, a teacher was transferred to a different school after complaining about discriminatory hiring practices. Id. at 182.  The Court found that the plaintiff did not suffer an adverse employment act because his teaching position after the transfer involved the same responsibilities and the same pay. Id. at 183-84.  Here, the record evidence shows that the position at Boca Raton Middle School would not have resulted in any material changes to Plaintiff's job responsibilities,  pay, and duty days. (Deposition of Plaintiff at 86.)

Nonetheless, Plaintiff contends that the transfer was materially adverse because "he was not able to coach in the area he wanted to coach, could not teach in the field he wanted to teach, could not build up seniority in his chosen areas of teaching and was reassigned to a geographically undesirable location which would require more travel."  (Resp. at 3.)   In making this assertion, Plaintiff does not cite to record evidence.  A review of Plaintiff's deposition,

17

however, shows that Plaintiff testified that he did not want to work as a science teacher.[9]  He only

wanted to teach physical education. (Deposition of Plaintiff at 63-64.)  The harm Plaintiff would

have suffered by transferring to Boca Raton Middle School would be not "doing what [he]

loved." (Deposition of Plaintiff at 86.)   This testimony does not demonstrate a material

adversity.  "It is not enough that a transfer imposes some de minimus inconvenience or alteration

of responsibilities."  Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir.1998)

(noting a transfer to a different position may be adverse if it involves a reduction in pay,

responsibilities or prestige); see Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821,

829 (11th Cir. 2000) (transfer can constitute adverse employment action if it involves reduction in

pay, prestige or responsibility).   Lastly, with respect to the Plaintiff's claim that the Boca Raton

Middle School was in a geographically undesirable location, there is no record evidence

supporting Plaintiff's claim.  In fact, the Court notes that both schools are located in Boca Raton,

Florida.

It is unclear to the Court whether the adverse employment act with respect to the alleged

gender discrimination is the transferring of Plaintiff to Boca Raton Middle School.  Notably,

Plaintiff's response memorandum does not identify any other adverse employment act other than

the transfer discussed supra.  However, to the extent that Plaintiff's affidavit highlights various

alleged indignities he endured (e.g., coaching track, participating in a basketball league, coaching

a team whose access to the gymnasium was curtailed, being removed from coaching track, being

assigned multiple classes, not being given keys to personal fitness facilities, having sole

responsibility for monitoring the male locker room and having a request for training equipment

---

[9] Plaintiff previously taught Middle School science. (Affidavit of Plaintiff ¶¶ 2-3.)

denied), the Court will briefly note that "[n]ot everything that makes an employee unhappy is an actionable adverse employment action." Shannon v. BellSouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quoting Bass v. Board of County Comm'rs., 256 F.3d 1095, 1118 (11th Cir. 2001)). With that in mind, the Court finds that these complaints fall short of adverse employment actions. See Davis, 245 F.3d at 1239 ("it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions or privileges' of the plaintiff's job in a real and demonstrable way").

Significantly, Plaintiff points to no evidence of a similarly situated employee who is not of mixed race or a man and who was transferred under the UAT process. With respect to some of the other acts briefly discussed by the Court supra, Plaintiff's evidence of similarly situated non-mixed race employees and women is nothing more than his personal opinion and conclusory allegations, which is simply insufficient to withstand summary judgment. See Holfield, 115 F.3d at 1564 and n.6 (plaintiff's opinion that he felt discriminated against, without more, is not enough to establish a prima facie case of race discrimination). Plaintiff must provide specific factual information about those employees' work history or responsibilities. Indeed, at the summary judgment stage, "the court's inquiry is probing, and a plaintiff may not survive summary judgment simply by pointing to superficial similarities." Cannon v. Dyncorp, No. Civ.-A. 1:04CV279, 2005 WL 1458745, * 5 (M.D. Ala. June 20, 2005) (citing Cooper v. Southern Co., 390 F.3d 695, 741 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) (per curiam) (comparing work history records in a disparate compensation claim). Because the record is devoid of facts upon which a reasonable juror could find that Plaintiff has identified a similarly situated employee who was treated more favorably or

that Plaintiff suffered an adverse employment act, Defendants are entitled to summary judgment with respect to the disparate treatment claim.

       <u>3.  Retaliation</u>

       Plaintiff's remaining section 1983 retaliation claim is based on an alleged violation of section 1981.  "Because [Plaintiff] has sued the [school] [d]istrict, a state-created entity, section 1983 serves as the exclusive vehicle through which [Plaintiff] must pursue his section 1981 [race] based retaliation claim." <u>Adams v. Cobb County School Dist.</u>, 242 Fed. App'x 616, 620 (11th Cir. 2007) (citing <u>Butts v. County of Volusia</u>, 222 F.3d 891, 892 (11th Cir. 2000)). "Whether the elements of Title VII and section 1981 retaliation claims are the same is an 'open question' in this Circuit." <u>Bass v. Board of County Comm'rs, Orange County, Fla</u>. 256 F.3d 1095, 1120 n.10 (11th Cir. 2001).  Claims brought under the FCRA are analyzed under the same framework as Title VII.  <u>Alvarez</u>, 2010 WL 2631839, at * 14.  Given that neither party objects to the application of Title VII framework, the Court chooses to apply this law to Plaintiff's race based retaliation claim.

       To establish a prima facie case for retaliation, Plaintiff must show that 1) he engaged in protected activity; 2) he suffered an adverse employment action and 3) there is some causal relationship between his protected activity and the adverse employment action. <u>See</u> <u>Alvarez</u>, 2010 WL 2631839, at * 11; <u>Holifield</u>, 115 F.3d at 1566.  "To meet the causal link requirement, the plaintiff `merely has to prove that the protected activity and the negative employment action are not completely unrelated'" <u>Holifield</u>, 115 F.3d at 1566 <u>quoting</u> <u>E.E.O.C. v. Reichhold Chemicals, Inc</u>., 988 F.2d 1564, 1571-72 (11th Cir. 1993).  However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected expression at the time the

employer took adverse employment action against the plaintiff." Holfield, 115 F.3d at 1566

citing Goldsmith v. City of Atmore, 966 F.2d 1155, 1163 (11ᵗʰ Cir. 1993); Weaver v. Casa

Gallardo, Inc., 922 F .2d 1515, 1524 (11ᵗʰ Cir. 1991).

The Court begins by noting that it is unclear from the record as well as Plaintiff's

response memorandum what activity Plaintiff has identified as protected.  In the Second

Amended Complaint, Plaintiff alleges that the protected activity is the May 10, 2007 charge of

discrimination. (Second Am. Compl. ¶ 30-31.)  During Plaintiff's deposition, he testified that

Plaintiff's retaliation claim is based on his belief that he was treated differently after his mother

opened a charter school in 2006 and was not based on his filing of a Charge of Discrimination

with the EEOC. (Deposition of Plaintiff at 87-88.)  The Court will address each of these in turn.

Clearly, the filing of a charge of discrimination with the EEOC is protected conduct.  See

EEOC v. Total Sys. Serv., Inc., 221 F.3d 1171, 1174 (11ᵗʰ Cir. 2000); 42 U.S.C. § 2000e-3(a).

Not surprisingly, Plaintiff provides no caselaw to support his claim that the opening of a charter

school *by his mother* would constitute protected activity under federal law.  Nor does the Court

believe that the civil rights laws pled by Plaintiff in his Second Amended Complaint were

designed to protect this activity.

Next, in determining the scope of what constitutes an adverse act, the United States

Supreme Court decision, Burlington Northern & Santa Fe Railway Co., v. White, 548 U.S. 53

(2006), held in a Title VII action that the application of that statute's retaliation provision is not

limited to actions by employers that affect the terms, conditions or status of employment, or even

those acts that occur at the workplace. Burlington Northern, 548 U.S. at 62-64. Instead, the

anti-retaliation provision covers those employer actions that would be seen as materially adverse

21

to a reasonable employee or, in other words, would serve to dissuade a reasonable employee from bringing a charge of discrimination. Id. at 68. Furthermore, because the significance of any act must be viewed in the appropriate context, the "legal standard speaks in general terms rather than specific prohibited acts." Id. at 69. "Burlington also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." Crawford v. Carroll, 529 F.3d 961, 974 n.13 (11th Cir. 2008) (citing Burlington, 548 U.S. at 71.) For this reason, the Court will assume, without deciding, that Plaintiff has established an adverse act for purposes of the retaliation claim.[10]

Here, the record evidence undisputedly demonstrates that the notice of Plaintiff's transfer, on May 8, 2007, occurred prior to the filing of his EEOC complaint on May 10, 2007. Thus, there is no disputed issue of fact that the act of which Plaintiff complains as retaliatory conduct

---

[10] Courts differ in finding on summary judgment whether lateral transfer can constitute an adverse employment action in the retaliation context. See, e.g., Sillars v. Nevada, No. 08-17502, 2010 WL 2617801, at * 1 (9th Cir. June 13, 2010) (while a lateral transfer may constitute an adverse action, it depends on the circumstances of the particular case); Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 485 (5th Cir. 2008) (finding a lateral transfer with equal pay was not materially adverse action); Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C. Cir. 2010) (finding that while a lateral transfer cannot rise to the level of a materially adverse employment action, whether a particular reassignment of duties constitutes an adverse action is generally a jury question); Stephens v. Erickson, 569 F.3d 779, 792 (7th Cir. 2009) (affirming the granting of summary judgment when the plaintiff's job duties were altered, but noted that altering job duties can be materially adverse); Hunter v. Secretary of United States Army, 565 F.3d 986, 997 (6th Cir. 2009) (transfer was not materially adverse because there was not significantly different responsibilities, a change in benefits or other negative effect). The Court also notes that in Polite, supra, the Eleventh Circuit found no error in the granting of summary judgment in a post-Burlington retaliation claim, noting that the transfer did not change the plaintiff's responsibilities or pay. Polite, 314 Fed. App'x at 183-84.

occurred prior to the filing of his May 10, 2007 complaint.[11]

Lastly, with respect to Defendant Licata's qualified immunity, the Court finds that Plaintiff has failed to meet his burden in showing that qualified immunity should not apply here. Simply put, Plaintiff has not shown that Defendant Licata violated his constitutional or statutory rights. Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008). Likewise, to the extent Plaintiff has attempted to bring a claim for deliberate indifference against the Defendant School Board, that claim also fails. (Second Am. Compl. ¶ ¶ 32-33.) Given that Plaintiff has not established a predicate constitutional violation, the claim for deliberate indifference necessarily fails. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir.1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); Vineyard v. County of Murray, 990 F.2d 1207, 1211 (11th Cir.1993) (per curiam) ("Only when it is clear that a violation of specific rights has occurred can the question of section 1983 municipal liability for the injury arise.").

---

[11] Plaintiff's affidavit refers to a "lower evaluation" (Affidavit of Plaintiff ¶ 29.) Assuming Plaintiff is contending this is an adverse act, the Court notes that Plaintiff's Second Amended Complaint makes no mention of the evaluation. Thus, Defendants would not have been put on notice about this evaluation, given that it first appears in Plaintiff's affidavit, filed after the January 29, 2010 discovery deadline. Nor does Plaintiff mention this in his response memorandum. Thus, it appears to be a new claim for which Defendants did not have the opportunity to conduct discovery. In any event, several courts have concluded that commencing a performance evaluation, providing a lower evaluation or even falsely reporting a poor performance did not constitute a material adverse act post-Burlington. See, e.g., Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 644 (8th Cir. 2009); Lahar v. Oakland County, 304 Fed. App'x 354, 357-58 (6th Cir. 2008); Skyes v. Pennsylvania State Police, 311 Fed. App'x 526, 529 (3d Cir. 2008); Clegg v. Arkansas Dept of Correction, 496 F.3d 922, 929 (8th Cir. 2007); cf. Steele v. Schafer, 535 F.3d 689, 696 (D.C. Cir. 2008) (diminished cash bonus as a result of poor evaluation can constitute retaliatory action).

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' The School Board of Palm Beach County, Florida and Peter Licata's Motion for Summary Judgment (DE 51 and 53) is **GRANTED**.  The Court will separately enter judgment for Defendants.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 12th day of August, 2010.

_____
KENNETH A. MARRA
United States District Judge

24